**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBYN BRODY, | Case No. 1:22-cv-06249 (DLC) |
| Plaintiff, | |
| - against - | |
| FOX BROADCASTING COMPANY, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

PRELIMINARY STATEMENT .......................................................................... 1

FACTS .............................................................................................................. 4

ARGUMENT ..................................................................................................... 9

I.      PLAINTIFF HAS SUED THE WRONG DEFENDANT ........................................ 9

II.     FOX 35 MADE A FAIR USE OF THE BRODY IMAGE ..................................... 9

        A.      Fox 35 Made a Fair Use of the Brody Image Because the Nature and
                Purpose of the Use Was for News Reporting, Not Commercial
                Exploitation, and Because the Use Was Transformative ............................ 10

                1.      News Reporting is one of the Statutory Examples of Fair Use
                        Identified in the Preamble to Section 107 of the Copyright
                        Act ................................................................................................ 10

                2.      The Incorporation of the Brody Image into the Fox 35
                        Interview Was Transformative Under <u>Campbell</u> ............................ 12

                3.      Fox 35 Did Not Make a Commercial Use of the Brody Image ....... 16

        B.      Fox 35 Prevails Under the Second Fair Use Factor Because
                Conveying Historical Facts, Not the Expressive Content of the
                Brody Image, Was the Point of Including it in the News Segment ........... 18

        C.      Fox 35 Prevails Under the Third Fair Use Factor Because It Did Not
                Use Any More of the Brody Image Than Necessary for a Fair Use .......... 20

        D.      The Fox 35 Story Could Not Harm Plaintiff's Market for the Brody
                Image ................................................................................................... 22

CONCLUSION ................................................................................................. 24

## TABLE OF AUTHORITIES

<u>**Cases**</u>

Am. Geophysical Union v. Texaco Inc.,
   60 F.3d 913 (2d Cir. 1994)........................................................................... 13, 17

Associated Press v. Meltwater U.S. Holdings, Inc.,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013)................................................................ 20

Barcroft Media, Ltd. v. Coed Media Group, LLC,
   297 F. Supp. 3d 339 (S.D.N.Y. 2017)................................................................ 19

Bill Graham Archives v. Dorling Kindersley Ltd.,
   448 F.3d 605 (2d Cir. 2006)........................................................... 13, 14, 15, 16

Blanch v. Koons,
   467 F.3d 244 (2d Cir. 2006)............................................................... 14, 18, 20

Bond v. Blum,
   317 F.3d 385 (4th Cir. 2003), cert. denied,
   540 U.S. 820 (2003) ........................................................................................ 22

Bouchat v. Baltimore Ravens Ltd. P'ship,
   737 F.3d 932 (4th Cir. 2013), cert. denied,
   572 U.S. 1117 (2014) ...................................................................................... 10

Brownmark Films, LLC v. Comedy Partners,
   682 F.3d 687 (7th Cir. 2012)........................................................................... 10

Campbell v. Acuff-Rose Music, Inc.,
   510 U.S. 569 (1994) ................................................................................. passim

Cariou v. Prince,
   714 F.3d 694 (2d Cir. 2013), cert. denied,
   571 U.S. 1018 (2013) .................................................................. 10, 13, 21, 23

Castle Rock Entm't v. Carol Pub. Group,
   150 F.3d 132 (2d Cir. 1998)...................................................................... 22, 23

Cortec Industries, Inc. v. Sum Holding L.P.,
   949 F.2d 42 (2d Cir. 1991).............................................................................. 9

Ferdman v. CBS Interactive Inc.,
   342 F. Supp. 3d 515 (S.D.N.Y. 2018)............................................................... 18

Harper & Row Pubs., Inc. v. Nation Enters.,
   471 U.S. 539 (1985) ................................................................................. passim

Hirsch v. Complex Media, Inc.,
   No. 18 Civ. 5488 (CM), 2018 WL 6985227 (S.D.N.Y. Dec. 10, 2018)....................... 19

Hollander v. Swindells-Donovan,
   No. 08-CV-4045 (FB) (LB), 2010 WL 844588 (E.D.N.Y. Mar. 11, 2010) ................ 22

Jartech, Inc. v. Clancy,
   666 F.2d 403 (9th Cir.1982) .......................................................................... 22

North Jersey Media Group Inc. v. Pirro,
   74 F. Supp. 3d 605 (S.D.N.Y. 2015) .............................................................. 19

Nunez v. Caribbean Int'l News Corp.,
   235 F.3d 18 (1st Cir. 2000) ..................................................................... 14, 15

NXIVM Corp. v. Ross Institute,
   364 F.3d 471 (2d Cir. 2004) ......................................................................... 22

Pani v. Empire Blue Cross Blue Shield,
   152 F.3d 67 (2d Cir. 1998), cert. denied,
   119 S.Ct. 868 (1999) ...................................................................................... 9

Savage v. Council on American-Islamic Relations, Inc.,
   No. C07-6076, 2008 WL 2951281 (N.D. Cal. July 25, 2008) ................................ 12, 22

Scott v. WorldStarHipHop, Inc.,
   No. 10 Civ. 9538 (PKC), 2011 WL 5082410 (S.D.N.Y. Oct. 25, 2011) ...................... 10

Seltzer v. Green Day,
   725 F.3d 1170 (9th Cir. 2013) ...................................................................... 16

Sony Corp. of Am. v. Universal City Studios, Inc.,
   464 U.S. 417 (1984) ..................................................................................... 22

Swatch Grp. Mgmt., Ltd. v. Bloomberg,
   756 F.3d 73 (2d Cir. 2014) ........................................................................... 20

Time Inc. v. Bernard Geis Assocs.,
   293 F. Supp. 130 (S.D.N.Y. 1968) ................................................................. 16

Twin Peaks Prod., Inc. v. Pub. Int'l Ltd.,
   996 F.2d 1366 (2d Cir. 1993) ....................................................................... 17

Video-Cinema Films, Inc. v. CNN, Inc.,
   No. 98 Civ. 7128 (BSJ), 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) ................ 16, 17

Wright v. Warner Books, Inc.,
   953 F.2d 731 (2d Cir. 1991) ................................................................... 3, 12, 20

**Statutes**

17 U.S.C. § 107 ............................................................................................. 11

17 U.S.C. § 107(3) .......................................................................................... 20

## **Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1

## **Other Authorities**

S. Rep. No. 94-473, p. 61 (1975) ................................................................ 11

Pierre N. Leval, *Toward a Fair Use Standard*,
    103 Harv. L. Rev. 1105 (1990) ............................................................. 13

## INTRODUCTION

Defendant Fox Broadcasting Company, LLC ("FBC"), respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiff Robyn Brody ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This action strikes at the heart of the fair use doctrine and threatens to burden the functioning of a free press. If Plaintiff prevails, television news organizations reporting on high-profile criminal indictments and other official proceedings will be prohibited from displaying centrally important public documents that are not only germane to matters of intense public interest but are themselves part of the story to be reported.

On January 6, 2022, a local reporter at WOFL FOX 35 Orlando ("Fox 35") conducted a remote interview of Kelly Meggs, who spoke to the reporter from his jail cell in Washington DC. Meggs has been described as the head of the Florida chapter of the Oath Keepers, one of the extremist organizations that participated in the insurrection at the U.S. Capitol on January 6, 2021. The interview took place on the one-year anniversary of the insurrection and concerned Meggs's subsequent indictment.

The Fox 35 segment reported on the allegations in the indictment, including the contents of an FBI Special Agent's supporting Affidavit, which incorporated an image originally taken by Plaintiff. The image captured the infamous scene in which Oath Keepers marched up the steps of the Capitol Building in a "stack formation," a military tactic used in breaching buildings. The indictment relies upon Plaintiff's image of the "stack" as evidence to identify Meggs as one of the insurrectionists.

The Fox 35 interview employed a time-honored technique of TV news reporting: the interview showed the front page of the criminal complaint in the center of the screen and then highlighted several images that were filed as part of the supporting Affidavit (one of which was an altered version of Plaintiff's image of Meggs and the Oath Keepers). In the version of the image that the FBI Special Agent used in his Affidavit, a red oval is superimposed over a portion of the original image to focus the court's attention on the "stack formation" of Oath Keepers. (The version with the red oval is hereafter referred to as the "Brody Image"). The Fox 35 interview included two brief displays of the Brody Image that had been taken from the court file and used the image (including the red oval) to explain the government's allegation that Meggs and the Oath Keepers had marched in the "stack formation" as part of their assault on the Capitol.

Plaintiff brings a single cause of action for copyright infringement, which must be dismissed for two reasons. First, as a threshold matter, Plaintiff has sued the wrong defendant. Fox 35 is not owned and operated by FBC, but by Oregon Television, LLC, which, in turn, has the same ultimate corporate parent as FBC.

But, more important, the Fox News 35 news report made a classic fair use of the image. Because the image had been included in the public file as evidence supporting a high-profile criminal indictment, the image had itself become an element of a news story of intense public interest. Fundamentally, news reporting is one of the specifically enumerated examples of a fair use identified by Congress in the Copyright Act. Indeed, under the first of the four statutory fair use factors in section 107, which concerns the "purpose and character" of the secondary use, the Second Circuit has held that "if a

[work] falls into one of these categories . . . assessment of the first fair use factor should be at an end." Wright v. Warner Books, Inc., 953 F.2d 731, 737 (2d Cir. 1991). That principle squarely applies in this case. Fox 35 made a fair use of the image because it was used transformatively—as news—and not for a commercial purpose.

Because Fox 35's use of the image was transformative, the other fair use factors are of less importance. And in any event, those factors equally favor a fair use. Under the second fair use factor (which considers the nature of the copyrighted work), the pleadings show that the original copyrighted image is factual in nature, not an expressive work. The image captures a moment in time and documents the January 6 insurrection under circumstances that did not permit any real control by the author. Furthermore, because the work was already widely published and Fox 35's use of the image did not deprive the owner of her right to control the first publication, the second factor favors a finding of fair use.

The third factor of the fair use test, which considers the amount of the image that was used, also favors a finding of fair use because it would not have been logical for Fox 35 to have used any less of the image than it did. The Brody Image's importance lay in the fact that it had been filed as a crucial part of the indictment against Meggs, and it *had* to be shown to explain the government's allegation in the indictment that Meggs was one of the Oath Keepers in the image who had proceeded up the steps of the Capitol. The government relied on the image for that very purpose. The image became the news.

Finally, Fox 35's use of the image to report the contents of the Meggs indictment did not usurp the market for the work because Plaintiff remains at liberty to license her

work. Moreover, as noted by the Supreme Court in <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 591 (1994), where a use is transformative, the likelihood of market harm is negated. Weighed together, the fair use factors mandate dismissal of the Complaint. The public interest in promoting news reporting of the Meggs indictment and the events of January 6 demands no less.

## <u>FACTS</u>

For purposes of this motion only, FBC assumes the truth of the factual allegations in the Complaint, <u>except</u> to the extent that they are irreconcilable with the underlying factual matter upon which the Complaint relies, *i.e.,* the Brody Image itself and the Fox 35 segment that is referred to throughout the pleading.[1]

FBC is a limited liability company "registered" in New York. The Complaint recites that FBC "may be served" at 28 Liberty Street, New York, New York, 10005. (Compl., ¶ 3). However, as set forth below, the pertinent allegations in the Complaint concern a television broadcast on Fox 35, a local television station serving the greater Orlando, Florida area. As set forth in the accompanying Declaration of Laura Cleveland, Fox 35 is not owned or operated by FBC, but by Oregon Television, LLC, which is held indirectly through Fox/UTV Holdings, LLC, and shares a common parent with FBC, *i.e.,* Fox Corporation.

Plaintiff is a professional photographer and photojournalist and covered the insurrection on January 6, 2021. (Compl., ¶¶ 2, 7). Plaintiff owns a copyright in a

---

[1]     A true and correct copy of the Complaint is attached as <u>Exhibit 1</u> to the accompanying Declaration of Steven G. Mintz, Esq. ("<u>Mintz Decl.</u>").

photographic image of Kelly Meggs and other so-called "Oath Keepers" in military-style gear marching in a "stack formation" during the storming of the Capitol Building on January 6, 2021. Plaintiff attached a copy of the image in which she claims a copyright to her Complaint at Exhibit A. (Compl., ¶ 9).

Plaintiff registered her copyright with the United States Copyright Office. (Compl., ¶ 11). Plaintiff attached a copy of the Certificate of Registration to her Complaint as Exhibit B.

The Complaint is not precise regarding the form of what it calls the original "Copyrighted Work" (Compl., ¶ 9), *i.e.*, whether it was a photograph or part of a video. However, the Certificate of Registration attached to the Complaint reveals that the original "Copyrighted Work" was a motion picture (Compl., Exhibit B), in which event the image appended at Exhibit A to the Complaint would appear to be a single screenshot taken from the larger "Copyrighted Work."

Plaintiff alleges that she discovered the "Copyrighted Work being reproduced, distributed and publicly displayed, without Plaintiff's authorization, at one of Defendant's websites to illustrate a news story in which one of Defendant's correspondents in Florida interviewed Kelly Meggs by telephone from his jail cell in Washington D.C." (Compl., ¶ 13). Plaintiff attached two screenshots from the Fox 35 program as Exhibit C to her Complaint. Plaintiff alleges that "Defendant" discovered her "Copyrighted Work" on the internet and used it in violation of various exclusive rights under the Copyright Act. (Compl., ¶ 14).

The broadcast at issue was a television news report that is now hosted on the Fox 35 website. The program features an interview conducted remotely by a local Fox 35 reporter, Holly Bristow, of a self-proclaimed leader of the Oath Keepers in Florida named Kelly Meggs, who spoke from his jail cell in Washington DC. Two versions of the interview, broadcast at 10:00 p.m. and 11:00 p.m., are presented on the web page under the article titled, "Capitol Riot suspect, leader of the Oath Keepers speaks from D.C. jail." (Compl., Exhibit C).[2] Digital copies of the relevant portions of the 10:00 p.m. and 11:00 p.m. editions of the interview which currently appear on the Fox 35 website are filed with this motion as Exhibits 1 and 2 to the Declaration of Melissa Medalie.

However, despite Plaintiff's inaccurate allegation, the allegedly infringing image is not the same one in which Plaintiff claims a copyright and that she attached as Exhibit A to her Complaint. The Brody Image is a derivative work taken from the original, which bears a red oval to center the viewer's eye on the "stack formation" of the Oath Keepers as they marched single file up the steps of the Capitol as part of an effort to interfere with Congress's certification of President Biden's election. The altered image used by Fox 35 was originally filed almost a year before on February 11, 2021, as part of the Affidavit of an FBI Special Agent that was submitted in support of the Criminal Complaint charging Kelly Meggs, Connie Meggs, Graydon Young, and Laura Steele with various criminal

---

[2]    See https://www.fox35orlando.com/news/capitol-riot-suspect-speaks-to-fox-35-news-exclusively-from-d-c-jail. The first of the two videos on this page is titled "Chaos at the Capitol." That segment, broadcast in the 10:00 p.m. news hour on January 6, 2022, includes a portion of the Meggs interview. The second video, broadcast at 11:00 p.m., is embedded on the lower part of the page and contains more of the interview.

offenses in connection with the insurrection. See United States of America v. Kelly Meggs, et al., Case No. 1:21-cr-00028-APM, at ECF Doc. No. 1-1, ¶ 17). A copy of the FBI Special Agent's Affidavit is attached as Exhibit 3 to the Medalie Declaration.[3]

The Brody Image appears twice in the 11:00 p.m. Fox 35 segment. At one point during  the interview, the Fox 35 reporter says, "[i]n his indictment, federal prosecutors identify Meggs and his co-conspirators walking in a 'stack' formation up the Capitol Building steps." As the reporter describes the scene, using a familiar TV news technique, the Fox 35 segment shows a slow-motion roll of a slightly cropped version of the Brody Image for about eight seconds, complete with the FBI's red oval to identify Meggs and the other insurrectionists in their "stack formation" assault up the steps of the Capitol.

Later in the interview, after Meggs claimed that he and the other "Oath Keepers" were purportedly "sitting out there…singing…and just hanging out," the Fox 35 news report cuts to a picture of the first page of the federal criminal complaint, with the voice-over commenting that, "The feds paint a different picture in Meggs' indictment, saying the 'stack' Meggs was a part of was "a mob that aggressively advanced towards the east side rotunda doors…assaulted the officers guarding the doors, threw objects, and spread chemicals towards the officers and the doors and pulled violently on the doors…" While the Fox 35 reporter says those words, the entire Brody Image, again including the red

---

[3]     The version of the FBI Special Agent's affidavit submitted in support of this motion does not bear the ECF legend at the top of the document and is the redacted version that the Fox 35 team originally obtained and from which it acquired the Brody Image. The same document was filed on ECF in the Washington DC criminal case and can be found online (with the ECF legend visible) under United States of America v. Kelly Meggs, et al., Case 1:21-cr-00028-APM (D.D.C.).

oval supplied in the FBI Special Agent's supporting affidavit, appears on the screen for about 16 seconds, superimposed over the now-faded copy of the first page of the criminal complaint. [4]

The Complaint makes the conclusory and self-serving *ipse dixit* allegation that Defendant's use of the Brody Image is "for commercial purposes" (Compl., ¶ 19); that it is "not for educational purposes" (Compl., ¶ 20); that it "does not transform the Copyrighted Work by adding new expression or meaning" (Compl. ¶ 21); and that it "does not add to the Copyrighted Work by creating new information, new aesthetics, new insights, and understandings of the Copyrighted Work." (Compl., ¶ 22). However, as the Complaint reveals on its face, the Brody Image (a derivative work filed by the Department of Justice in a criminal complaint) was, indeed, transformative both in appearance and in its purpose—as part of a news report. For the following reasons, Fox 35's use of the Brody Image was a fair use on the face of the Complaint and the action should be dismissed at this stage of the proceeding.

\* \* \*

---

[4]     The version of the interview broadcast in the 10:00 p.m. news hour showed the same slow roll of the image, but did not include the stationary display that took place at 11:00 p.m.

**ARGUMENT**

## I.     **PLAINTIFF HAS SUED THE WRONG DEFENDANT.**

Plaintiff has sued the wrong defendant. Fox 35 is not owned and operated by FBC, but by Oregon Television, LLC. <u>See</u> Declaration of Laura Cleveland. Dismissal is therefore appropriate under Rule 12(b)(6).

## II.     **FOX 35 MADE A FAIR USE OF THE BRODY IMAGE.**

Even if FBC were properly named as a Defendant—and it is not—the Complaint would still be subject to dismissal because the Fox 35 news report is a textbook example of a fair use. It is apparent from the face of the pleadings that the Fox 35 program used the Brody Image transformatively for news reporting purposes. Indeed, the Brody Image was itself an integral part of the story to be reported. Thus, on its face, the Fox 35 interview's display of the Brody Image was a fair use of the original "Copyrighted Work" and the Complaint may be dismissed under Rule 12(b)(6).

The Second Circuit has held that "[a]n affirmative defense may be raised by a preanswer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 74 (2d Cir. 1998), <u>cert</u>. <u>denied</u>, 119 S.Ct. 868 (1999). Here, the affirmative defense appears on the face of the Complaint because the Brody Image and the challenged Fox 35 segment are integral to the Plaintiff's allegations and are referenced and relied upon in the pleading. <u>See</u> <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).

While the fair use doctrine is traditionally a mixed question of fact and law, <u>see</u> <u>Cariou v. Prince</u>, 714 F.3d 694, 704 (2d Cir.), <u>cert</u>. <u>denied</u>, 571 U.S. 1018 (2013), in a proper case, courts can and will dismiss a cause of action for breach of copyright at the pleading stage. <u>See</u> <u>Scott v. WorldStarHipHop, Inc.</u>, No. 10 Civ. 9538 (PKC), 2011 WL 5082410, at *8 (S.D.N.Y. Oct. 25, 2011). Federal courts can find a fair use by comparing the allegedly infringing work described in the complaint with the original work. <u>Brownmark Films, LLC v. Comedy Partners</u>, 682 F.3d 687, 690 (7th Cir. 2012). As we demonstrate below, the four fair use factors favor Fox 35 so decisively that the Complaint cannot possibly state a plausible claim for copyright infringement and the action must therefore be dismissed.

A.   Fox 35 Made a Fair Use of the Brody Image Because the Nature and Purpose of the Use Was for News Reporting, Not Commercial Exploitation, <u>and Because the Use Was Transformative</u>.

The first fair use factor considers the purpose and character of the allegedly infringing secondary use. Courts frequently examine this factor through a two-part inquiry, looking first at whether the use was transformative and then considering the extent to which the use serves a commercial purpose. <u>See</u> <u>Bouchat v. Baltimore Ravens Ltd. P'ship</u>, 737 F.3d 932, 939 (4th Cir. 2013), <u>cert</u>. <u>denied</u>, 572 U.S. 1117 (2014).

1.   News Reporting is one of the Statutory Examples of Fair Use <u>Identified in the Preamble to Section 107 of the Copyright Act</u>.

Section 107 of the Copyright Act (Limitations on exclusive rights: Fair use) states in relevant part as follows:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords

or by any other means specified by that section, for purposes such as criticism, comment, ***news reporting***, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (emphasis added).

As illustrated in the preamble, the overarching question in a fair use analysis is whether the secondary user's work created something new, benefitting society with the addition of new expression, "such as criticism, comment, news reporting, teaching . . . scholarship, or research." The fair use doctrine, therefore, balances the constitutional purposes of copyright law by allowing some secondary users (such as Fox 35) to employ the owner's work without their consent so long as those uses constitute a *bona fide* contribution of new knowledge or creative expression, as opposed to merely repackaging or pirating the copyright owner's work.

News reporting is one of the specifically enumerated examples that Congress identified in the Copyright Act as "the sort of activities the courts might regard as fair use under the circumstances." Harper & Row Pubs., Inc. v. Nation Enters., 471 U.S. 539, 561 (1985) (citing S. Rep. No. 94-473, p. 61 (1975)). Moreover, the Second Circuit has held

that "if a [work] falls into one of these categories . . . assessment of the first fair use factor should be at an end." Wright, supra, 953 F.2d at 737.

On the face of the pleadings, Fox 35 displayed the Brody Image within a news report about a pending criminal proceeding in which the original "Copyrighted Work" had been used in an FBI agent's supporting affidavit to advance the government's case. The reporter's voiceover during the time the Brody Image taken from the "Copyrighted Work" was on the screen states specifically that "*in his indictment federal prosecutors identify Meggs and his co-conspirators* walking in a stack formation up the Capitol steps" (emphasis added). Thus, the Fox 35 segment at issue in this case certainly qualifies as a textbook example of a fair use under section 107 because it was a timely report on a matter of clear public concern—the prosecution of an alleged January 6th insurrectionist. Indeed, it has been held that "the scope of fair use is broader when the information relayed involves issues of concern to the public." Savage v. Council on American-Islamic Relations, Inc., No. C07-6076, 2008 WL 2951281, at *4 (N.D. Cal. July 25, 2008) (quoting Harper & Row, 471 U.S. at 555-56).

    2.    The Incorporation of the Brody Image into the Fox 35 Interview
            Was Transformative Under Campbell.

Since Justice Souter's landmark decision in Campbell in 1994, the entire fair use analysis (and the first factor in particular) has been informed in the light of whether a use was "transformative." As Judge Leval explained in an influential article on the subject, a secondary use of a copyrighted work is transformative (and thus, not an infringement) if it uses the copyrighted material in a different manner or for a different purpose from that

of the original work. See Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105 (1990). Moreover, as the Second Circuit has observed, "[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative . . .." Cariou v. Prince, supra, 714 F.3d at 706. A secondary use qualifies as transformative so long as it "adds something new, with a further purpose or different character." Campbell, 510 U.S. at 579.[5]

Thus, for example, an illustrated history of the *Grateful Dead* band made a transformational use of seven concert posters when the book reproduced them in a drastically reduced size and blended them with other images and text. See Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 609-11 (2d Cir. 2006). The Second Circuit held that the secondary use of the *Grateful Dead* posters in Bill Graham Archives was transformative both as to their manner and their purpose. The manner of the secondary use was different because the book presented the posters in a different aesthetic, placing them within a montage of other images. The purpose of the secondary use was also different: whereas the original purpose of the band's posters was to advertise and promote *Grateful Dead* concerts, the secondary use was literary in function, illustrating the timeline of the band's career. Put differently, the secondary user's objective was to employ the posters as "historical artifacts to document and represent the

---

[5]   "It is therefore not surprising that the 'preferred' uses illustrated in the preamble to section 107, such as criticism and comment, generally involve some transformative use of the original work." Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 923 (2d Cir. 1994) (citing 3 Nimmer on Copyright, ¶ 13.05[A][1][b], at 13-160). News reporting, of course, is included among the "preferred" uses enumerated in the preamble to section 107 of the Copyright Act.

actual occurrence of *Grateful Dead* concert events featured on Illustrated Trip's timeline." Bill Graham Archives, 448 F.3d at 609.

The Second Circuit reached a similar conclusion in Blanch v. Koons, 467 F.3d 244, 251-53 (2d Cir. 2006), holding that a visual artist made a transformative use of a copyrighted picture of a woman's legs and glittery Gucci sandals. While the original work appeared in magazines and was intended to communicate a sexualized, glamorous lifestyle, the artist copied the image and included it in a collage painting alongside three similar images of women's legs and used the image as part of an artistic commentary on the banality of the mass media.

Fox 35, like the defendant in Bill Graham Archives, used a derivative of the copyrighted work for a purpose that was distinct from the one for which the work was originally created. Although Plaintiff created the Brody Image in the course of covering the January 6 insurrection (Compl., ¶ 7), Fox 35 used an already-transformed version of the image for a different purpose—to report on the subsequent criminal prosecution of one of the Oath Keepers one year later. Fox 35 did not merely "supercede[] the objects of the original creation," but it used the Brody Image for a "further purpose," providing a new meaning, Campbell, 510 U.S. at 579, specifically to report that federal prosecutors had brought an indictment and that they used the Brody Image as evidence of probable cause to indict Meggs and the other Oath Keepers.

Nunez v. Caribbean Int'l News Corp., 235 F.3d 18 (1st Cir. 2000) is squarely on point. In Nunez, the First Circuit held that the use of modeling photographs in news coverage was transformative, and therefore a fair use under section 107 of the Copyright

Act. There, a newspaper in Puerto Rico, *El Vocero*, had published photographs that

originally appeared in a modeling portfolio of Joyce Giraud, who held the title of Miss

Puerto Rico Universe 1997. The photographs were also displayed on local television. See

Nunez, 235 F.3d at 21. Affirming the district court's grant of summary judgment, the

First Circuit held that the reproduction of the photographs in *El Vocero* was

transformative because the copyright holder's original purpose was to publish the

photographs in portfolios, whereas the secondary user's evidently different purpose was

to provide news coverage, promoting public commentary and discussion on their subject

matter, namely, a controversy surrounding Miss Puerto Rico Universe 1997. Indeed, just

like the Fox 35 segment at issue in this case, *El Vocero* presented the photographs along

with an interview, thereby placing the story in context. See id. at 22.[6] The paper in Nunez

did not merely "supersede the objects of the original creations," but used them for a

"further purpose," *transforming the photographs into news*. See id. at 23. That is what

Fox 35 did in this case when it displayed the Brody Image for a few seconds at a time in a

report about Meggs and the Oath Keepers of approximately three minutes length. See Bill

Graham Archives, supra, 448 F.3d at 611 (isolated use of copyrighted posters in seven

pages of a 480-page book did not dominate the secondary user's work and thereby

---

[6]      In this respect, both Fox 35 and the news media defendant in the Nunez case stand in a
markedly different posture from the defendant in Harper & Row. In that case, *The Nation
Magazine* had obtained a stolen copy of the unpublished manuscript of the memoirs of former
President Gerald Ford. *The Nation* then published excerpts of the most eagerly anticipated
portion of the memoir, *i.e.,* President Ford's recollection of his pardon of the disgraced former
President Richard Nixon. *The Nation* thus "scooped" the story from *Time Magazine*, which had
been granted the exclusive right to publish excerpts in advance of the publication of the memoirs
in book form by Harper & Row. 471 U.S. at 542.

undermined any inference that the biography was a substitute for the original posters).

See also Time Inc. v. Bernard Geis Assocs., 293 F. Supp. 130, 146 (S.D.N.Y. 1968) (use of images from a copyrighted film of President Kennedy's assassination held fair where there was a public interest in having the information available); Video-Cinema Films, Inc. v. CNN, Inc., No. 98 Civ. 7128 (BSJ), 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) (use of a clip of a Robert Mitchum film as part of his obituary held a fair use). Such a transformative use is within the core of expression that is protected by the fair use doctrine.

### 3. Fox 35 Did Not Make a Commercial Use of the Brody Image.

The first fair use factor distinguishes between "commercial" uses of a copyrighted work, on the one hand and, on the other hand, secondary uses where the alleged infringer is not employing the original work for profit. "Commercial" uses are distinguished from those where the purpose is not motivated predominantly by profit by examining the central purpose of the use, including whether the use is among those illustrated in the preamble to the statutory fair use test in section 107. Seen in that light, Fox 35 did not make a "commercial" use of the Brody Image for purposes of the fair use analysis *simply* because Fox 35 is itself a commercial enterprise. It is not a bar to a finding of fair use that the defendant's use took place within a commercial context, particularly when the connection between the use of the original work and any commercial gain is attenuated. See Seltzer v. Green Day, 725 F.3d 1170, 1178 (9th Cir. 2013) (copyrighted picture of Scream Icon was "only incidentally commercial; the band never used it to market the concert, CDs, or merchandise"); see also Bill Graham Archives, 448 F.3d at 612 (because

16

publisher of an illustrated history of the *Grateful Dead* used pictures and text in a book to describe the life of the band, but not in commercial advertising or to promote sales of the book, use of the images held incidental to the commercial value of the book).

Here, the presence of the Brody Image in the challenged news segment was similarly incidental to whatever income Fox 35 received from the broadcast (*e.g.,* advertising revenue realized from previous sales of airtime and web page advertising). "The commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a <u>direct</u> consequence of copying the original work." <u>Am. Geophysical Union v. Texaco Inc.</u>, 60 F.3d 913, 922 (2d Cir. 1994) (emphasis supplied); <u>see also</u> <u>Video-Cinema Films, Inc. v. CNN, Inc.</u>, No. 98 Civ. 7128 (BSJ), 2001 WL 1518264, at *6 (S.D.N.Y. Nov. 28, 2001) ("Courts should look to see whether the new work will be used for a purpose favored by the statute rather than Defendants' status as a for-profit entity").[7] There is absolutely no suggestion in the Complaint that Fox 35 sought to make a commercial exploitation of the Brody Image *as such*, other than to broadcast it within a news segment, as part of an entire evening news program. <u>Cf</u>. <u>Twin Peaks Prod., Inc. v. Pub. Int'l Ltd.</u>, 996 F.2d 1366, 1375 (2d Cir. 1993) ("[w]e have been more solicitous of the fair use defense in works, which though intended to be profitable, aspired to serve

---

[7]     As Justice Souter put it in <u>Campbell</u>, if "commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble of § 107 . . . since these activities are generally conducted for profit . . . Samuel Johnson could pronounce that '[n]o man but a blockhead ever wrote, except for money.'" 510 U.S. at 584 (citation omitted).

broader public purposes"). To the extent that the fair use analysis otherwise requires the court to consider the "propriety" of the use, see Harper & Row, 471 U.S. at 562, Plaintiff fails plausibly to allege facts supporting an inference that Fox 35 acted in bad faith, as opposed to legitimately reporting on a matter of public interest. Thus, the first fair use favors Defendant.

> B.   Fox 35 Prevails Under the Second Fair Use Factor Because Conveying Historical Facts, Not the Expressive Content of the Brody Image, Was the Point of Including it in the News Segment.

The second fair use factor shifts the focus of the fair use analysis from the nature and purpose of the defendant's *use* of the original work to the nature of the work *itself*. Under the second fair use factor, the court considers two different aspects of the copyrighted work. *First,* the court considers "whether the work is expressive or creative, such as a work of fiction, or more factual." Blanch v. Koons, 467 F.3d at 256 (All other things being equal, because the Copyright Act protects expression as opposed to facts and ideas, the use of a factual work will be more readily treated as fair than a secondary uses of creative, imaginative or fictional works (such as songs or movies). See Harper & Row, 471 U.S. at 563.

The Brody Image was principally factual in nature, not expressive. On the face of the Complaint, the Brody Image was a non-fictional image taken in real time during the January 6 insurrection and depicted historical events of the highest national importance as they occurred. Photographs of public events, even those that are historical and newsworthy, are generally deemed more factual than expressive. See Ferdman v. CBS Interactive Inc., 342 F. Supp. 3d 515, 538 (S.D.N.Y. 2018) (in case where copyrighted

image taken in a spot accessible to the general public, "[t]he fact that [p]laintiff was photographing the events around him as they occurred supports a finding of fair use"); Barcroft Media, Ltd. v. Coed Media Group, LLC, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017) (celebrity photographs taken in public deemed factual);  North Jersey Media Group Inc. v. Pirro, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015) (photojournalist's picture of 9/11 firefighters raising American flag in real time near the ruins of the World Trade Center "just happened," supporting factual nature of copyrighted work). This is especially true when the original photograph was taken specifically for news-gathering purposes. Hirsch v. Complex Media, Inc., No. 18 Civ. 5488 (CM), 2018 WL 6985227, at *7 (S.D.N.Y. Dec. 10, 2018).

Here, as in North Jersey, the Plaintiff would have had very little creative control over the selection of the subject matter. The evident circumstances of the image reveal that she had no control over the lighting of the scene, and she *certainly* had no control whatever over the posing or positioning of the subjects. At best she may have had control over the choice of the lens and the selection of various photography fundamentals (such as her camera's shutter speed, or the aperture of the lens) but given the rapidly evolving situation on the ground during the January 6 insurrection, Plaintiff was in no position to do anything but rapidly shoot a video in the crowd. On the face of the Complaint, therefore, the image is a documentary in real time of an event, rather than an expression of the photographer's creative vision.

*Second,* after classifying the work as factual as opposed to creative in nature, the court looks to whether the original work was published or unpublished at the time of the

secondary use. When the work at issue was published before the allegedly infringing use, the second fair use factor weighs more heavily in favor of a fair use because the defendant's use did not implicate the plaintiff copyright owner's "right to control the first public appearance of his expression." See Swatch Grp. Mgmt., Ltd. v. Bloomberg, 756 F.3d 73, 88 (2d Cir. 2014) (quoting Harper & Row, 471 U.S. at 564). See also Wright, 953 F.2d at 737. Here, the Certificate of Registration, attached as Exhibit B to Plaintiff's Complaint, recites on its face that the first publication took place on January 6, 2021—*a full year* before Fox 35 used the transformed version of the image that had been included in the District Court file. Thus, this factor weighs in favor of Fox 35, not the Plaintiffs. Associated Press v. Meltwater U.S. Holdings, Inc., 931 F. Supp. 2d 537, 557 (S.D.N.Y. 2013) (Cote, J.).

C.       Fox 35 Prevails Under the Third Fair Use Factor Because It Did Not Use Any More of the Brody Image Than Necessary for a Fair Use.

The third factor of the fair use analysis concerns "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor considers whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." Swatch Grp., 742 F.3d at 89 (quoting Campbell, 510 U.S. at 586); Blanch, 467 F.3d at 257.

To make that assessment, this factor undertakes both a quantitative and qualitative analysis. The quantitative assessment looks to the portion of the copyrighted work that was taken in relation to the overall size of the copyrighted work. The qualitative analysis considers the importance of the portion of the work taken. See Harper & Row, 471 U.S.

at 564-65 (copying 300 words of verbatim quotes from Gerald Ford's memoirs found unfair where the selected portions recounting the Nixon pardon were "essentially the heart of the book"). But a secondary use "must be [permitted] to 'conjure up' *at least enough* of the original" to fulfill its transformative purpose." <u>Cariou</u>, 714 F.3d at 710 (quoting <u>Campbell</u>, 510 U.S. at 588) (emphasis added).

Fox 35 used no more of Plaintiff's copyrighted work than necessary to show exactly how the government used it to identify the alleged insurrectionists, showing the Brody Image as it had been reproduced in the FBI Special Agent's affidavit, including, in particular, the red oval that prosecutors used to "identify Meggs and his co-conspirators." The fact that Meggs and his co-conspirators were configured in a "stack formation" was centrally relevant to the indictment—which is why the image was used by the FBI Special Agent in the first place and why it was necessary to show it on screen during the portion of the report that explains the government's allegation regarding Meggs. The image remains on the screen only for as long as necessary to explain the relevance of the "stack formation" and the allegation regarding the stack formation in the Special Agent's supporting Affidavit filed in support of the criminal complaint. Indeed, it would have been illogical for Fox 35 ***not*** to have displayed the Brody Image in the report, and it certainly would have been "bad TV". For example, if the voice-over had simply intimated to the audience that the government had relied upon "a picture" of Meggs in the indictment without showing the Brody Image on the screen, most viewers of the program listening to the audio portion would wonder why they could not see the publicly filed image in the Fox 35 segment. Thus, this factor favors a fair use.

D.      <u>The Fox 35 Story Could Not Harm Plaintiff's Market for the Brody Image</u>.

The test for whether a secondary use "harms" the market for a copyrighted work is whether, if the challenged use "should become widespread, it would adversely affect the potential market for the copyrighted work." <u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 451 (1984). To answer this question, the Court must consider whether Fox 35's use might plausibly serve as a substitute for the original. <u>See</u> <u>Campbell</u>, 510 U.S. at 591. <u>See</u> <u>also</u> <u>Castle Rock Entm't v. Carol Pub. Group</u>, 150 F.3d 132 (2d Cir. 1998) (publisher of trivia book based on popular *Seinfeld* television series harmed the market for the original work because the trivia book served the same purpose as the series itself, feeding viewers' desire to be entertained by *Seinfeld* characters).

Here, the Complaint fails plausibly to allege that the isolated display of the Brody Image "usurps the market of the original work." <u>NXIVM Corp. v. Ross Institute</u>, 364 F.3d 471, 482 (2d Cir. 2004) (citing <u>Campbell</u>, <u>supra</u>, 510 U.S. at 593). <u>See</u> <u>also</u> <u>Savage v. Council on American-Islamic Relations, Inc.</u>, <u>supra</u>, 2008 WL 2951281, at *9 (plaintiff failed to allege an impact on the actual or potential sale, marketability, or demand for the original, copyrighted work; motion for judgment on the pleadings granted).[8] Brody

---

[8]      Parenthetically, the use of the Brody Image as an exhibit in the criminal complaint against Meggs was *itself* undeniably a fair use. <u>See</u>, <u>e.g.</u>, <u>Hollander v. Swindells-Donovan</u>, No. 08-CV-4045 (FB) (LB), 2010 WL 844588, at *3 (E.D.N.Y. Mar. 11, 2010), <u>aff'd</u> <u>sub</u> <u>nom</u>. <u>Hollander v. Steinberg</u>, 419 F. App'x 44 (2d Cir. 2011) (citing <u>Jartech, Inc. v. Clancy</u>, 666 F.2d 403, 407 (9th Cir.1982)) (use of copyrighted material for purposes of litigation is fair). <u>See</u> <u>also</u> <u>Bond v. Blum</u>, 317 F.3d 385, 389 (4th Cir. 2003), <u>cert</u>. <u>denied</u>, 540 U.S. 820 (2003) (use of an unpublished manuscript in a child custody hearing was a fair use where the use was solely for its factual content, not for its mode of expression). By extension, on the face of the pleadings, Fox 35's secondary use of the image was similarly for its factual content only—to report that the government was

remains at liberty to license her original "Copyrighted Work," which is an entire video. Thus, the market for the "Copyrighted Work" would remain unharmed by Fox 35's use of a single (annotated) screen grab.

In any event, where, as here, as the Court held in <u>Campbell</u>, the secondary use is *transformative*, the possibility of market harm fades away. <u>See</u> <u>Campbell</u>, 510 U.S. at 591. <u>See</u> <u>also</u>, <u>Cariou</u>, 714 F.3d at 709 ("'the more transformative the secondary use, the less likelihood that the secondary use substitutes for the original'") (quoting <u>Castle Rock</u>, 150 F.3d at 145). As discussed above, on the face of the pleadings Fox 35 made a quintessentially transformative use of the Brady Image, not merely using it to illustrate a story concerning the subject matter of the copyrighted work, but to report on the image itself as an element of the government's indictment of Meggs and the other Oath Keepers, and because the image itself was now a matter of public interest. Accordingly, upon balancing all the four fair-use factors, the Court should find that the defense of a fair use appears on the fact of the Complaint and dismiss the action.

* * *

---

alleging, on the basis of Plaintiff's image taken at the event, that Meggs marched in "stack formation" as part of the Oath Keepers' attack on the Capitol on January 6, 2021.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Complaint fails to state a plausible cause of action for copyright infringement. Given the nature and purpose of Fox 35's use of the Brody Image, there would be no point to re-pleading, and the action should be dismissed with prejudice.

Dated:   New York, New York
         September 15, 2022

                               **MINTZ & GOLD LLP**

                               /s/ Steven G. Mintz
                               Steven G. Mintz
                               Terence W. McCormick
                               600 Third Avenue
                               25th Floor
                               New York, New York 10016
                               Tel:   (212) 696-4848
                               mintz@mintzandgold.com
                               mccormick@mintzandgold.com
                               *Attorneys for Defendant*
                               *Fox Broadcasting Company, LLC*